# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN FLYNN and PAULA LYCAN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WELCH FOODS INC., A COOPERATIVE and PROMOTION IN MOTION, INC., <br><br> Defendants. | Case No. 1:23-cv-01260-JHR |

# CLASS ACTION COMPLAINT

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 5786967)
*rclarkson@clarksonlawfirm.com*
Timothy K. Giordano (SBN 4091260)
*tgiordano@clarksonlawfirm.com*
Zachary T. Chrzan (to be admitted *pro hac vice*)
*zchrzan@clarksonlawfirm.com*
Chaz Glick (to be admitted *pro hac vice*)
cglick@clarksonlawfirm.com
590 Madison Ave., 21st Fl
New York, NY 10022
Telephone: (213) 788-4050
Facsimile: (213) 788-4070

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

Page(s)

COMPLAINT ........................................................................................................ 1

INTRODUCTION ................................................................................................. 1

COURTS FIND "NO PRESERVATIVES" MISLABELING CLAIMS MERITORIOUS AND
APPROPRIATE FOR CLASS TREATMENT ........................................................ 6

JURISDICTION .................................................................................................... 7

VENUE .................................................................................................................. 7

PARTIES ............................................................................................................... 8

    A.    Plaintiffs .................................................................................................... 8

    B.    Defendants ............................................................................................... 10

FACTUAL ALLEGATIONS ............................................................................... 11

    A.    Growing Demand for Preservative-Free and Other Healthy Food Products.......... 11

    B.    Citric Acid Is a Preservative.................................................................. 14

    C.    Lactic Acid Is a Preservative.................................................................. 17

    D.    The Deceptive Labeling and Advertising of the Products ..................... 19

    E.    Defendants Knowingly Misled, and Continue to Mislead, Plaintiffs and Other
Reasonable Consumers Who Relied, and Continue to Rely, on the Material and
False "No Preservatives" Representation to Their Detriment................................ 31

    F.    Defendants' False Advertising Unfairly Harms Competition ................................ 36

    G.    The Products are Substantially Similar .................................................. 38

NO ADEQUATE REMEDY AT LAW.................................................................. 40

CLASS ACTION ALLEGATIONS ..................................................................... 42

COUNT ONE........................................................................................................ 46
    Violation of New York General Business Law
    New York General Business Law § 349, et seq.

COUNT TWO ................................................................................................................. 50

     Violation of New York General Business Law
     New York General Business Law § 350, *et seq*.

COUNT THREE ............................................................................................................. 53

     Fraudulent Inducement – Intentional Misrepresentation Under New York Law
     (*On Behalf of Plaintiffs and the Class*)

COUNT FOUR ............................................................................................................... 55

     Breach of Express Warranty Under New York Law
     (*On Behalf of Plaintiffs and the Class*)

COUNT FIVE ................................................................................................................. 57

     Unjust Enrichment/Restitution Under New York Law
     (*On Behalf of Plaintiffs and the Class*)

PRAYER FOR RELIEF .................................................................................................. 59

DEMAND FOR JURY TRIAL ....................................................................................... 60

## COMPLAINT

1.      Plaintiffs Ryan Flynn and Paula Lycan ("**Plaintiffs**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" or "**Class Members**"), bring this class action complaint against Defendants Welch Foods Inc., A Cooperative ("**Welch's**") and Promotion In Motion, Inc. ("**PIM**") (collectively, "**Defendants**"), and allege the following based upon investigation, information, and belief, unless otherwise expressly stated as based upon personal knowledge.

## INTRODUCTION

2.      **Synopsis.** Welch's is one of the most iconic and trusted brands in the consumer marketplace with a long history of touting the health benefits of its products to parents and families alike. As a result, generations of children have grown up enjoying the company's fruity drinks and snacks.

3.      This class action lawsuit arises from a simple, yet egregious, abuse of that trust: Welch's falsely labels its popular fruit snacks ("**Products**"), which it deems 'America's favorite fruit snacks,' as containing "No Preservatives" (hereinafter, "**No Preservatives Representation**" or "**Challenged Representation**"), even though they contain two preservatives: citric and lactic acid.

4.      Welch's knowingly makes this false label claim: it employs teams of food scientists, and the scientific community universally recognizes citric and lactic acid as preservatives. Further, food and beverage lawsuits around the nation have been upheld where products with additives such as citric acid have been falsely labeled as containing no preservatives.

5.      Notably, Welch's competitors <u>also</u> use citric acid in their fruit snacks; but <u>only</u>

1

Welch's persists in making the false No Preservative claim. Welch's conduct therefore not only interferes with the public's right to know what they are ingesting, but it helps Welch's improperly capture sales that would otherwise go to lawfully acting competitors.

6.      Welch's ignores the weight of authority, food science, and industry practice related to preservatives, because its false declaration of "No Preservatives" drives sales and profits: consumers wish to avoid preservatives and, therefore, they seek out and are willing to pay more for products labeled as containing no preservatives.

7.      Even worse, Welch's targets health-conscious parents who are especially concerned about feeding their children preservatives such as citric and lactic acid because the chemicals can erode children's tooth enamel and aggravate their gastrointestinal tracts.

8.      Accordingly, absent judicial intervention, parents and the larger public will continue to unknowingly ingest something they do not want, for themselves or their children, and pay a higher price to do so.

9.      Below is a fair and accurate depiction of the Products' front labeling with the prominent false No Preservatives Representation circled in red. *See **Figure 1***.

//

//

//

//

//

//

//

//

2

***Figure 1.***



*See also* Welch's® Fruit Snacks Front Labeling and Ingredient List, **Exhibits 1-1 to 1-12**.

10.    **The Deceptive "No Preservatives" Representation.** The "No Preservatives"

Representation misleads reasonable consumers, including Plaintiffs, into believing that they are

purchasing preservative-free Products. But contrary to Defendants' representations, the Products

contain two preservatives: citric acid and lactic acid.

11.    The false "No Preservatives" Representation is placed conspicuously, in bold

typeface, in the center of the Products' front labels. It is positioned among other health-related

claims and images typically associated with a healthy, natural diet. The cumulative impression of the Products' labeling is that the Products contain no preservatives whatsoever — and that they are healthier as a result.

12.     Defendants' labeling of the Products with the false "No Preservatives" Representation violates New York General Business Law § 349, *et seq.*, and New York General Business Law § 350, *et seq.* Defendants fraudulently induced Plaintiffs and the Class to purchase the Products, breached express warranties about the Products, and have been unjustly enriched as a result of their deceptive labeling scheme.

13.     Defendants' false and deceptive "No Preservatives" claim is uniformly advertised through their labeling, packaging, and online and print advertising. Through this false and deceptive advertising, Defendants have misled Plaintiffs and other reasonable consumers into buying the Products at stores across New York based on Defendants' materially false claim that the Products contain "No Preservatives." Plaintiffs and the Class have suffered injury in fact caused by this market distortion, and seek injunctive relief, including without limitation public injunctive relief, as well as, *inter alia*, compensatory damages, statutory damages, restitution, and attorneys' fees.

14.     **The Products.** The Products at issue are all flavors, varieties, and sizes of Welch's® brand fruit snacks sold in New York that include the "No Preservatives" representation on their front labels and/or packaging. The Products include, but are not limited to, the following product lines and flavors.

     a.   Welch's® Fruit Snacks Mixed Fruit,

     b.   Welch's® Fruit Snacks Summer Fruits,

     c.   Welch's® Fruit Snacks Berries 'n Cherries,

  d. Welch's® Fruit Snacks Island Fruits,

  e. Welch's® Fruit Snacks Superfruit Mix,

  f. Welch's® Fruit Snacks Strawberry,

  g. Welch's® Fruit Snacks Apple Orchard Medley,

  h. Welch's® Fruit Snacks Citrus Medley,

  i. Welch's® Fruit Snacks Fruit Punch,

  j. Welch's® Fruit Snacks Concord Grape,

  k. Welch's® Fruit Snacks Reduced Sugar Mixed Fruit,

  l. Welch's® Fruit Snacks Reduced Sugar Berries 'n Cherries.

15. **Primary Dual Objectives.** Plaintiffs bring this action individually and on behalf of those similarly situated to represent a Class of consumers who purchased the Products. Plaintiffs' primary objective is to secure injunctive relief requiring Defendants to change their unlawful advertising and labeling practices for the benefit of consumers, including Plaintiffs, the Class, and the general public. Plaintiffs also seek monetary recovery of the premium consumers paid for the Products due to the false and deceptive labeling, consistent with permissible law (including, for example, damages, restitution, and disgorgement).

16. **Public Injunction.** Plaintiffs seek a permanent public injunction to prevent the future fraudulent labeling, advertising, and sale of products falsely claiming to contain "No Preservatives." An order enjoining the use of deceptive "No Preservatives" representations in connection with the advertising and sale of any food product benefits the general public as a whole, as opposed to a particular class of persons, without consideration of the individual claims or legal rights of any non-party who would benefit from the relief sought. Defendants' fraudulent, deceptive, and unlawful conduct in labeling and advertising the Products using the

misleading "No Preservatives" representation poses an actual and imminent threat to the general public, including all consumers who are not members of the putative Class, as it risks economic injury due to false advertising. Further, sale of the falsely labeled Products impedes the general public's right to know what ingredients they are ingesting, in furtherance of their personal health and general wellbeing. Absent an order enjoining Defendants' unlawful conduct as described herein, consumers will continue to rely on Defendants' misrepresentations to their detriment, and the general public will be subjected to a persistent threat of future harm.

## COURTS FIND "NO PRESERVATIVES" MISLABELING CLAIMS MERITORIOUS AND APPROPRIATE FOR CLASS TREATMENT

17.    State and federal courts have found that cases involving nearly identical claims are meritorious and appropriate for class treatment. *See, e.g.*, *Ashour v. Ariz. Beverages United States LLC*, 2022 U.S. Dist. LEXIS 193603 (S.D.N.Y. Oct. 24, 2022) (denying motion to dismiss "No Preservatives" mislabeling claims where beverages contained citric acid); *Cabrega v. Campbell Soup Co.*, No. 18-CV-3827(SJF)(ARL), 2019 U.S. Dist. LEXIS 245320 (E.D.N.Y. Nov. 18, 2019) (denying in part motion to dismiss "no preservatives" mislabeling claims where the product contained citric acid); *Prescod v. Celsius Holdings, Inc.*, Case No. 19STCV09321 (L.A.S.C. Aug. 8, 2021) (certifying as a class action a case involving beverages containing citric acid falsely labeled as having "No Preservatives" and resulting in a $7.8M classwide settlement preliminarily approved in its companion case in the Southern District of New York); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103 (S.D. Cal. 2021) (denying motion to dismiss "no preservatives" mislabeling claim where the products contained citric acid); *In re Coca-Cola Prods. Mktg. & Sales Practices Litig. II*, No. 14-md-02555-JSW, 2016 U.S. Dist. LEXIS 66266 (N.D. Cal. May 19, 2016) (denying defendant's motion for summary judgement as to "No

Preservatives" mislabeling claims where the products contained the preservative phosphoric acid).

**JURISDICTION**

18.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) the Class consists of 100 or more members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states.

19.     This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

20.     Defendants are subject to personal jurisdiction in New York based upon sufficient minimum contacts which exist between Defendants and New York. Defendants are authorized to do and are doing business in New York.

**VENUE**

21.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to Plaintiffs' claims occurred in this District. Defendants made the challenged false representations in this District; and Plaintiff Flynn purchased the Products in this District. Defendants also receive substantial revenue from sales in this District, and Defendants made numerous misrepresentations on its labeling that had a substantial effect in this District, including but not limited to, labeling and packaging advertisements.

//

//

7

## PARTIES

A.   **Plaintiffs**

22.   **Plaintiff Ryan Flynn.** Plaintiff Ryan Flynn is, and at all times relevant hereto

was, a citizen of New York residing in New York County. Plaintiff Flynn purchased a 10-count

box of the Product, specifically the Welch's® Fruit Snacks Mixed Fruit flavor, for approximately

$4.00 at a Walgreens store in or around Manhattan, New York in 2022. In making his purchase,

Plaintiff relied upon Defendants' labeling of the Product as containing "No Preservatives" and

was misled to believe that the Product was preservative-free. These labels were prepared and

approved by Defendants and disseminated statewide, as well as designed to encourage

consumers like Plaintiff to purchase the Products. At the time of purchase, Plaintiff Flynn did not

know that the "No Preservatives" representation was false. Like the average consumer, Plaintiff

Flynn lacks the specialized knowledge required to determine what ingredients are preservatives.

Had Plaintiff Flynn known the Product contained preservatives such as citric and lactic acid, he

would not have purchased the Product, or he would have paid less for it. Plaintiff Flynn spent

money to purchase the Product, which was different than what he expected based on Defendants'

false label, and Plaintiff Flynn did not receive the benefit of the bargain. Plaintiff Flynn enjoys

fruit snacks as a common household staple and intends to purchase the Products again in the

future if he could be sure that the Products' labeling was truthful. But due to Defendants'

deception, Plaintiff Flynn in the future will be unable to determine with confidence based on the

labeling and/or other marketing materials, and without specialized knowledge, whether the

Products truly contain "No Preservatives," including any preservatives beyond citric or lactic

acid. Plaintiff Flynn cannot rely on the No Preservatives or any other Label representations with

confidence in the future, and so he will not know if he should buy the Product again as he intends

and wishes to do. Absent injunctive relief, Plaintiff Flynn cannot now or in the future rely on the representations on the Products' labels.

23.    **Plaintiff Paula Lycan.** Plaintiff Lycan is, and at all times relevant hereto was, a citizen of New York residing in Queens County. Plaintiff Lycan purchased a 10-count box of the Product, specifically the Welch's® Fruit Snacks Mixed Fruit flavor, for approximately $4.00 at a Walgreens store in or around Ridgewood, New York in 2021. In making her purchase decision, Plaintiff Lycan relied upon Defendants' labeling of the Product as containing "No Preservatives" and was misled to believe that the Product was preservative-free. These labels were prepared and approved by Defendants and disseminated statewide, as well as designed to encourage consumers like Plaintiff to purchase the Products. At the time of purchase, Plaintiff Lycan did not know that the "No Preservatives" representation was false. Like the average consumer, Plaintiff Lycan lacks specialized knowledge required to determine what ingredients are preservatives. Had Plaintiff Lycan known the Product contained preservatives such as citric and lactic acid, she would not have purchased the Product, or she would have paid less for it. Plaintiff Lycan spent money to purchase the Product, which was different than what she expected based on Defendants' false label, and Plaintiff Lycan did not receive the benefit of the bargain. Plaintiff Lycan enjoys fruit snacks as a common household staple and intends to purchase the Products again in the future if she could be sure that the Products' labeling was truthful. But due to Defendants' deception, Plaintiff Lycan in the future will be unable to determine with confidence based on the labeling and/or other marketing materials, and without specialized knowledge, whether the Products truly contain "No Preservatives" including any beyond citric or lactic acid. Plaintiff Lycan cannot rely on the No Preservatives or any other Label representations with confidence in the future, and so she will not know if she should buy the Product again as she

intends and wishes to do. Absent injunctive relief, Plaintiff Lycan cannot now or in the future

rely on the representations on the Products' labels.

**B.**    **Defendants**

24.    **Defendant Welch Foods Inc., A Cooperative**. Defendant Welch's is a Michigan

corporation headquartered in Concord, Massachusetts. Welch's maintains its principal place of

business at 300 Baker Avenue, Suite 101, Concord, MA 01742. Welch's was doing business in

the State of New York at all relevant times, including the Class Period. Directly and through its

agents, Welch's has substantial contacts with and receives substantial benefits and income from

and through the State of New York. Welch's licenses the Welch's® trademark to the

manufacturer and distributor of the Products, PIM, and Welch's approved the "No Preservatives"

Representation. Welch's brand recognition was a substantial factor in bringing the Products to

the consumer market, as the good will and familiarity associated with the Welch's® name makes

the Products more attractive to consumers. As a licensor, and because it exerts control or

influence over the manufacturing, labeling, advertising, distribution, and/or sale of the Products,

Welch's is responsible for the false and deceptive "No Preservatives" Representation that was

disseminated throughout New York.

25.    **Defendant Promotion In Motion, Inc.** ("**PIM**"). Defendant PIM is a Delaware

corporation headquartered in New Jersey and maintains its principal place of business at 1 PIM

Plaza, Park Ridge, NJ 07656. Defendant PIM, directly and through its agents, has substantial

contacts with and receives substantial benefits and income from and through the State of New

York. PIM and its agents manufactured, promoted, marketed, and sold the Products at stores and

retailers throughout New York, as well as on the internet. The false and deceptive "No

Preservatives" Representation on the Products' packaging was prepared, authorized, ratified,

and/or approved by PIM and its agents, and was disseminated throughout New York.

26.      In committing the wrongful acts alleged herein, Defendants planned, participated in, and furthered a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Products. Defendants participated in the making of such representations in that they did disseminate or cause to be disseminated the "No Preservatives" misrepresentations.

27.      Defendants, upon becoming involved with the licensing, manufacture, distribution, advertising, marketing, and sale of the Products, knew or should have known that the "No Preservatives" claim is fraudulent. Defendants affirmatively misrepresent the nature and a key characteristic of the Products to convince the public to purchase and consume the Products, resulting in significant profits to Defendants, all to the detriment of the consuming public and Defendants' lawfully acting competitors.

## FACTUAL ALLEGATIONS

### A.      Growing Demand for Preservative-Free and Other Healthy Food Products

28.      **Healthy Food Products Are in High Demand.** Global sales of 'healthy' food products reached a staggering $680 billion in 2020.[1] According to Nielsen's 2015 Global Health & Wellness Survey, which polled over 30,000 people, 80 percent of Americans are willing to pay more for healthier foods.[2] These figures underscore the following: consumers have a strong desire for 'healthy' food and beverage products and are willing to pay a premium for products

---

[1] *The Global Wellness Economy: Looking Beyond COVID*, GLOBAL WELLNESS INST. (Dec. 2021), https://globalwellnessinstitute.org/press-room/statistics-and-facts/ (accessed February 14, 2023).
[2] *See We Are What We Eat: Healthy Eating Trends Around the World*, at 13, NIELSEN (Jan. 2015), https://content.money.com/wp-content/uploads/2015/05/nielsen_global_health_and_wellness_report_-_january_2015.pdf (accessed February 14, 2023).

advertised as such.

29.     **"No Preservatives" Label Claims Drive Consumer Purchasing.** When

shopping for and consuming 'healthy' foods, one of the main ingredients that consumers avoid is

preservatives. For example, the FDA's 2019 Food Safety and Nutrition Survey found that **85**

**percent** of consumers are concerned about preservatives in food, and 17 percent are "[e]xtremely

concerned."[3]

30.     Consumers are increasingly interested in "clean eating," and Innova Market

Insights' 2020 Health & Nutrition Survey found that 51 percent of consumers believe that clean

eating means consuming products "free of additives and preservatives."[4]

31.     Another 2018 survey of nearly 1,600 consumers found that 93 percent want to eat

healthy at least some of the time, and 63 percent prefer to eat healthy foods "most or all of the

time."[5]

32.     The 2018 study also found that preservative-free foods are highly sought after,

and that "No Preservatives" representations are among the top two label claims driving consumer

health food purchasing decisions.[6]

33.     Companies leverage these known consumer preferences, using "No

Preservatives" label claims to drive sales by (1) distinguishing their products from competitors in

---

[3] A. Lando, L. Verrill & F. Wu, *FDA's Food Safety and Nutrition Survey, 2019 Survey*, at 17, U.S. FOOD & DRUG ADMIN. (Mar. 2021), https://www.fda.gov/media/146532/download (accessed February 14, 2023).
[4] *The Changing Face of Clean Label*. IFT.org. (Sept. 1, 2021), https://www.ift.org/news-and-publications/food-technology-magazine/issues/2021/september/columns/ingredients-clean-label (accessed February 14, 2023).
[5] *Consumers Say They Want to Eat Healthy*, FOOD INDUSTRY EXECUTIVE. (Sept. 2019), https://foodindustryexecutive.com/2019/03/consumers-say-they-want-to-eat-healthy/ (accessed February 14, 2023).
[6] Steingoltz, M., Picciola, M., & Wilson, R. *Consumer Health Claims 3.0: The Next Generation of Mindful Food Consumption*, Executive Insights, *XX*(51). L.E.K. (2018). https://www.lek.com/sites/default/files/insights/pdf-attachments/2051-Healthy-Food-Claims.pdf (accessed February 14, 2023).

the market, and (2) capitalizing on consumers' preference for "healthier" preservative-free products.

34.    **Parents Prefer Preservative-Free Foods.** Parents, to whom Defendants extensively market the Products, are especially concerned with avoiding preservatives in food they purchase for their children, as preservatives can erode children's tooth enamel and aggravate gastrointestinal tracts, among other possible negative consequences.

35.    In fact, a recent comprehensive meta-analysis examining what drives parental food-purchasing decisions found that parents prioritize representations about preservative content over <u>nearly every other</u> nutritional statement.[7]

36.    Study after study shows that parents prioritize nutritional value and health, and therefore avoid preservatives, when purchasing food products for their children. Another 2017 survey conducted by BabyCenter Brand Labs found that 32% of parents actively avoid products containing preservatives when purchasing food to feed their children.[8]

37.    According to parents, nutrition claims like "No Preservatives" increase the perceived healthiness of food products.[9]

38.    While parents prefer healthy products, they "often do not engage in an in-depth cognitive processing to make their healthiness judgement."[10] Instead, parents rely on the nutritional advertising claims made on food labels and packages.[11] In other words, parents rely on the accuracy of "No Preservative" label claims in making their purchase decisions.

---

[7] Divya Ravikumar et al., *Parental perceptions of the food environment and their influence on food decisions among low-income families: A rapid review of qualitative evidence*, 22 BMC PUBLIC HEALTH (2022).
[8] *2017 Food & Nutrition Report*, BabyCenter Brand Labs Insights (July 2017).
[9] Gastón Ares et al., *The role of food packaging on children's diet: Insights for the design of comprehensive regulations to encourage healthier eating habits in childhood and beyond*, 95 Food Quality and Preference, 104366, at 4 (2022).
[10] *Id.*
[11] *Id.*

39.     Companies know that health and safety are paramount when consumers purchase food for their children, so they include label statements conveying health benefits in an effort to drive parents to purchase their product over a competitor's.[12] And that is exactly what Welch's does here: it makes a claim that no other competitor with citric acid in their fruit snacks claim (because it is not true) — that the snacks are preservative-free.

40.     **Marketing Experts.** Experts in marketing and consumer behavior confirm what individual survey data indicates: consumers seek out and are willing to pay more for products without preservatives because of the perceived higher quality, as well as for the health and safety benefits associated with preservative-free food and beverages.

### B.     Citric Acid Is a Preservative

41.     **Chemical Properties of Citric Acid.** The Products contain citric acid. According to the chemical properties of citric acid and food scientists, citric acid is a preservative. Food preservatives are classified into two main groups: antioxidants and antimicrobials. Citric acid is an antioxidant, meaning it delays or prevents the deterioration of foods by so-called oxidative mechanisms.

42.     In particular, citric acid acts as an antioxidant agent via two processes—inhibiting enzymes and chelating metals. Certain enzymes oxidize food molecules, which contributes to food deterioration. Citric acid deactivates these enzymes, thereby functioning as a preservative.[13]

43.     Citric acid's ability to chelate, which means to form compounds containing a ligand bonded to a central metal atom at two or more points, with other chemical compounds,

---

[12] *Id.*
[13] *Preservatives*, BRITANNICA, https://www.britannica.com/topic/food-additive/Preservatives#ref502211 (accessed February 14, 2023).

also allows citric acid to stabilize active ingredients in food products.[14]

44.     Citric acid also has antimicrobial properties and inhibits the growth of some bacteria and mold.[15] This is yet another reason why food scientists classify citric acid as a preservative.[16]

45.     **Preservative Function of Citric Acid.** Citric acid functions as a preservative in the Products, and this is true regardless of Defendants' subjective purpose or intent for adding it to the Products, such as to impart flavor.[17]

46.     **The Citric Acid in the Products Is Chemically Processed.** Citric acid can be the naturally-occurring kind, which is derived from certain citrus fruits. But the citric acid in the Products is the commercially produced variety, which is manufactured and undergoes extensive chemical processing.[18] In fact, more than 90 percent of commercially produced citric acid, including the citric acid used in the Products, is produced through a processed derivative of black mold, *Aspergillus niger*, which can cause allergic reactions and diseases in humans.[19] Negative

---

[14] P. Davidson et al., *Chapter 9: Antimicrobial Agents*, in FOOD ADDITIVES, at 591 (A. Larry Branen et al. eds., Marcel Dekker, Inc. 2d ed. 2002).

[15] *Supra* note 13.

[16] *Citric Acid Compound Summary*, NAT'L CTR. FOR BIOTECHNOLOGY INFO., https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid (accessed February 14, 2023).

[17] *Citric Acid* in KIRK-OTHMER FOOD & FEED TECH., at 262 (John Wiley & Sons, 2007); L. Somogyi, *Chapter 13: Direct Food Additives in Fruit Processing,* in PROCESSING FRUITS: SCI. & TECH., at 302 (D. Barrett et al. eds., CRC Press 2d ed. 2004); M. Abd-Elhady, *Effect of citric acid, calcium lactate and low temperature prefreezing treatment on the quality of frozen strawberry*, 59 ANNALS OF AGRIC. SCIS., 69-75 (2014); J. deMan, *Chapter 11: Additives and Contaminants*, in PRINCIPLES OF FOOD CHEMISTRY, at 438 (AVI Publishing Co., Inc. 3d ed. 1999) ("Acids as food additives serve a dual purpose, as acidulants and as preservatives")

[18] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020).

[19] *Id.*; I. Sweis & B. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports*, 5 TOXICOLOGY REPS., 808-12 (2018); R. Ciriminna et al., *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product*, 11 CHEMISTRY CENT. J. 22 (2017), https://doi.org/10.1186/s13065-017-0251-y (accessed February 14, 2023); K. Kirimura, Y. Honda, & T. Hattori, *Citric Acid*, 3 COMPREHENSIVE BIOTECHNOLOGY 135 (2011), https://www.sciencedirect.com/science/article/pii/B9780080885049001690 (accessed February 14, 2023).

side effects of consuming manufactured citric acid include: swelling and stiffness resulting in joint pain; muscle pain; stomach pain; and shortness of breath.[20]

47.     **FDA Definition of "Preservative."** The U.S. Food and Drug Administration ("FDA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof." 21 C.F.R. § 101.22(a)(5). The citric acid in the Products has this effect.

48.     **The FDA Classifies Citric Acid as a Preservative.** In its "Overview of Food Ingredients, Additives & Colors," the FDA lists "citric acid" as a preservative.[21] The FDA also recognizes that preservatives, like citric acid, are commonly used in snack foods like the Products.

49.     Under the "What They Do" table heading, the FDA elaborates that preservatives help "prevent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness."[22] As discussed *supra* (¶¶ 41-44), these are the processes by which citric acid preserves food.

50.     **FDA Warning Letter.** The FDA's classification of citric acid as a preservative is reflected in a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc. In the letter, the FDA deemed the "Pineapple Bites" and "Pineapple Bites with Coconut" products manufactured by the companies "misbranded within the meaning of Section 403(k) of the [Federal Food and Drug Cosmetic] Act [21 U.S.C. 343(k)] in that they contain the *chemical*

---

[20] *Id.*
[21] *See Overview of Food Ingredients, Additives, and Colors*, U.S. FOOD & DRUG ADMIN. (2018), https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors#types (accessed February 14, 2023).
[22] *Id.*

*preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphases added).[23]

51.     **Food Science Experts.**  Food science experts recognize that citric acid is a preservative commonly used to extend a product's shelf-life, because many microorganisms are unable to grow in an acidic environment. Leading food science experts also agree that, notwithstanding the specific purpose for which it is added to a food, citric acid is a preservative and its presence in any food product renders a "No Preservatives" claim invariably deceptive.

     **C.     Lactic Acid Is a Preservative**

52.     **Chemical Properties of Lactic Acid.** Despite Defendants' declaration that the Products have "No Preservatives," they also contain a second preservative: lactic acid, which belongs to the category of preservatives known as antimicrobials.[24] This means it preserves by inhibiting the growth of spoilage and pathogenic microorganisms in food.[25] Lactic acid also is a pH control agent, which means it preserves foods by preventing rancidity or complex formation with heavy metals that lead to oxidation and/or browning reactions.[26] Thus, both the antimicrobial and the pH control properties of lactic acid function to extend the shelf life of food.

53.     Like citric acid, lactic acid also functions as a chelating agent. By binding metal ions that catalyze fat or oil oxidation, lactic acid stabilizes food color, aroma, and texture.[27]

54.     While lactic acid can be found naturally in various plants, microorganisms, and animals, the lactic acid in the Products is commercially produced and artificially manufactured

---

[23] *See* October 6, 2010 FDA Warning Letter to Chiquita Brands Int'l, Inc. and Fresh Express, Inc.
[24] *See supra*, note 13.
[25] *See supra*, note 14*.*
[26] *pH Control Agents and Acidulants Market*, PERSISTENCE MARKET RESEARCH, https://www.persistencemarketresearch.com/market-research/ph-control-agents-and-acidulants-market.asp (accessed February 14, 2023).
[27] D. Belitz, W. Grosch & P. Schieberle, *Chapter 8: Food Additives* in FOOD CHEMISTRY, at 455 (Springer, Berlin, Heidelberg, 2009).

by processes of chemical synthesis or microbial fermentation. Since 1995, nearly all lactic acid is produced via this fermentation method.[28] By 2013, approximately 90% of lactic acid worldwide was produced via fermentation.[29]

55.    **Preservative Function of Lactic Acid.** The primary use of lactic acid in the food industry is as a preservative.[30] Lactic acid functions as a preservative in the Products by suppressing bacteria growth and by preventing oxidation.[31] Like citric acid, lactic acid functions as a pH control agent and acidulent and is used to control acidity and prevent spoilage.[32]

56.    **Lactic Acid Functions as a Preservative in the Products.** Lactic acid functions as a preservative in the Products, and this is true regardless of Defendants' subjective purpose or intent for adding it to the Products, such as a gelatin agent.

57.    **Industry Custom for Gelatin-Based Products.** Lactic acid increases the shelf life of many gelatin-based food products, including fruit-flavored gummy snacks like the Products, which are water-soluble and therefore susceptible to degradation when exposed to oxygen, moisture, light, heat, and change in pH.[33] Water-soluble gelatin solutions are good media for microorganisms like bacteria and molds to grow, so it is common in the industry to lower the pH of (or acidify) the food product using lactic acid to maintain and prevent growth of microorganisms, despite new trends to use natural, more expensive preservatives such as spices

---

[28] John N. Starr & Gerrit Westhoff, *Lactic acid* in ULLMANN'S ENCYCLOPEDIA OF INDUSTRIAL CHEMISTRY, at 1–8 (2014).
[29] Hendrich Quitmann et al., *Acidic organic compounds in beverage, food, and feed production*, ADVANCES IN BIOCHEMICAL ENGINEERING/BIOTECHNOLOGY, at 115 (2013).
[30] *Id.* at 116.
[31] *What to Know About Lactic Acid in Food*, WEBMD. (2021), https://www.webmd.com/diet/what-to-know-about-lactic-acid-food#:~:text=Lactic%20acid%20is%20a%20good,agent%20and%20a%20curing%20agent (accessed February 14, 2023).
[32] *See supra*, note 13.
[33] B. Yan et al., *Improvement of vitamin C stability in vitamin gummies by encapsulation in casein gel*, FOOD HYDROCOLLOIDS 113 (Jan. 17, 2021), https://doi.org/10.1016/j.foodhyd.2020.106414 (accessed February 14, 2023).

or fruit peels.[34] Thus, removing citric acid and lactic acid from the Products would have effects on their pH, moisture, color, texture, and shelf life.[35] The Products would need to use a different, likely more expensive, method to sufficiently preserve their contents.

58.     **The FDA Defines Lactic Acid as an Antimicrobial Agent.** In 21 C.F.R. § 184.1061, the FDA recognizes lactic acid's use as an antimicrobial agent, which is defined as "[s]ubstances *used to preserve food* by preventing growth of microorganisms and subsequent spoilage, including fungistats, mold and rope inhibitors, and the effects listed by the National Academy of Sciences/National Research Council under 'preservatives.'" (emphasis added) 21 C.F.R. § 170.3(o)(2).

**D.     The Deceptive Labeling and Advertising of the Products**

59.     **Products' Labeling.** Defendants falsely and deceptively label all sizes, flavors, and variations of the Products with the Challenged Representation — "No Preservatives" — as depicted below and circled in red. *See **Figures 2-3**.*

//

//

//

//

//

//

//

---

[34] I. Matulyte et al., *The Effect of Myristica fragrans on Texture Properties and Shelf-Life of Innovative Chewable Gel Tablets,* 13 Pharmaceutics 2 (Feb. 9, 2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7915811/ (accessed February 14, 2023).
[35] *Id.*

*Figure 2.*



*Figure 3.*



60.     Because consumers place importance on the preservative content of foods,

Defendants place the false "No Preservatives" representation in a conspicuous location: on each

20

Product's front label or packaging and underneath the flavor and iconic Welch's brand name. To draw consumers' attention, the Challenged "No Preservatives" Representation is displayed in the center of the label, next to other material dietary information, including, for example, "Excellent Source of Vitamins A, C & E," "Gluten Free," and "Made with Real Fruit!" The net effect or impression on reasonable consumers is that the Products do not contain preservatives — because that is what the Products say, prominently.

61.    **Products' Website.**  In furtherance of this fraudulent labeling scheme, the false "No Preservatives" representation permeates Defendants' marketing strategy across all forms of media. For example, Defendants emphasize the "No Preservatives" representation on the Welch's ® Fruit Snacks website:

a.    **Welch's® Fruit Snacks: Our Story.** On the "Our Story" page of the Products' official brand website, Defendants state: "It's no wonder Welch's® are America's Favorite Fruit Snacks®. Available in over 10 varieties, in which Fruit is our 1st Ingredient!™ Featuring an excellent source of Vitamins A, C & E, ***No Preservatives***, Fat Free, Gluten Free and more! Available in a range of packaging options to fit your needs, whether at home, work or on the go."[36] By positioning the false "No Preservatives" representation among other statements implicating the health benefits of the Products, Defendants specifically target health-conscious consumers who make purchasing decisions based on these types of representations. A similar statement appears on the website's homepage, and additional images of the Products bearing the "No Preservatives" representation appear throughout the Products' official brand website. *See* Welch's® Fruit Snacks Website: Our Story Screenshots, ***Figure 4***.

//

//

---

[36] *Welch's® Fruit Snacks: Our Story*, WELCH'S FRUIT SNACKS,
https://welchsfruitsnacks.com/our-story/ (accessed February 14, 2023) (emphasis added).

*Figure 4.*



b. **Welch's® Fruit Snacks FAQ.** On the Frequently Asked Questions page on the Products' official brand website, Defendants falsely and repeatedly claim that the Products contain no preservatives. For example:

    i.     *Q: Do Welch's® Fruit Snacks . . . contain preservatives?* A: No, they are **preservative free.**

    ii.     *Q: Are Welch's® Fruit Snacks healthy?* A: Real fruit is the first ingredient in Welch's® Fruit Snacks. Healthy living involves getting the recommended daily allowance of vitamins and minerals. Welch's® Fruit Snacks are an excellent source of Vitamins C, A, and E. They are fat-free, gluten-free, and **have no preservatives.**[37] *See also* Welch's® Fruit Snacks Website FAQ Screenshots, ***Figure 5***.

---

[37] *Welch's® Fruit Snacks: FAQ*, WELCH'S FRUIT SNACKS, https://welchsfruitsnacks.com/faq/ (accessed February 14, 2023) (emphasis added).

*Figure 5.*





62.     **Welch's Twitter.** The Products also have a dedicated Twitter account, where Defendants similarly double-down on the fraud alleged herein, specifically isolating and touting the false "No Preservatives" claim.

63.     For example, the account tweets: "Did you know Welch's Fruit Snacks have **zero preservatives**?" Notably, in response to this, and similar tweets, the consuming public expresses

23

how important this claim is to them, in one case tweeting simply: "yes it's why I choose to eat them." *See* Welch's® Fruit Snacks Twitter: Screenshot, ***Figure 6.***

***Figure 6.***



64.     Further demonstrating the materiality of the false "No Preservatives" claim, parents have tagged the Product (and other Welch's products), exclaiming they have "no preservatives!" together with comments like: "My kids and I all approve!" *See* Welch's® Fruit

Snacks Twitter: Screenshot, **_Figure 7._**

**_Figure 7._**



65.     Defendants otherwise extensively and falsely tout the Products as preservative-free via the Products' Twitter account, further confirming Defendants know the claim is material to consumers and likely to induce purchase. *See, e.g.*, Welch's® Fruit Snacks Twitter: Screenshots, **_Figures 8-9._**

*Figure 8.*



*Figure 9.*



66.     **The Products Contain Preservatives.** Contrary to Defendants' false "No Preservatives" labeling and advertising, and excitement in the market based on it, the Products in fact contain preservatives. According to the Products' ingredient list on the back label, they contain at least two preservatives: citric acid and lactic acid. (**Exhibits 2-1 to 2-12**).

67.     In the consumer marketplace, Defendants therefore get the benefit of selling Products that purportedly contain "No Preservatives"—more demand for the Products and sales at a higher price per unit—without any of the added cost and complexity it otherwise would incur if the products were, in fact, preserved without citric and lactic acid.

68.     Given the importance consumers place on preservative-free foods, Defendants retain an unfair economic advantage over all other major fruit snacks on the market, which contain citric acid, but do not claim to have "No Preservatives" — because it is not true.

69.     **Reasonable Alternatives.** There are and were, at all relevant times, reasonable alternatives available to Defendants to comply with consumer protection laws. Like Defendants' competitors, Defendants could elect not to advertise the Products as having "No Preservatives" and thus lawfully continue using citric and lactic acid to preserve the Products.

70.     Alternatively, if Defendants wish to continue claiming "No Preservatives," there are other ways to enhance the shelf life of products without using the preservatives citric and lactic acid, such as vacuum packaging, although those methods are more difficult and more expensive. Defendants decided to take the easy route when it came to preserving the Products, yet they continue to make the false "No Preservatives" Representation.

71.     **Materiality.** The false "No Preservatives" Representation was and is material to reasonable consumers, including Plaintiffs, as research on consumer preferences demonstrates (*See* ¶¶ 28-40). That is why Defendants chose to feature it front and center on the Products' front labels, together with only two other health claims. Consumers perceive the Products as healthier due to the "No Preservatives" Representation and are more likely to purchase the Products as a result.

72.     **Defendants' Advertising Targets Children and Parents.** Defendants' knowing

disregard of consumer protection law is unacceptable from the vantage point of all consumers, but it is especially concerning in light of the special care advertisers are expected to take with regard to nutritional claims for foods that are likely to be appealing to children, as the Products are.

73.     Defendants' marketing efforts directly target parents and children to capitalize on parents' desires to provide healthy, well-balanced diets for their children. As explained *supra*, "No Preservatives" advertising claims make food products more attractive to consumers and increase the likelihood that consumers will purchase and consume the Products. Parents prioritize nutritional value and healthiness when selecting food products to purchase for their children and seek out products without preservatives. Thus, while the "No Preservatives" Representation is material to all consumers, it is especially material to parents.

74.     Defendants know that parents want preservative-free products. That is why Defendants intentionally aim their "No Preservatives" marketing and advertising efforts towards parents, children, and families.

75.     For example, the landing page for the Products' website prominently features Defendants' "Snack Fruitfully®" advertising campaign. Embedded in the landing page is a commercial showcasing the Products' front label, including the "No Preservatives" representation. *See **Figure 10**.* The remainder of the promotional video features young children consuming and enjoying the Products. *See **Figures 11-12.***

//

//

//

//

//

//

*__Figure 10.__*



*__Figure 11.__*



//

//

//

*Figure 12.*



76.     Moreover, on the "Our Story" page of the Products' official website, Defendants describe the Products as "Made for Families," and state: "Getting out the door with kids is never predictable. Some days are good, and others are bad. For you, on-the-go snacks are a must!" Similar appeals to families and parents are a recurring theme in Defendants' advertising materials.

77.     Defendants also target school districts with this false and deceptive labeling scheme. The Products' official brand website includes an external link for "School Foodservice." The link takes the user to a page titled "School Foodservice" on Defendant PIM's company website, where Defendants display several variations of the Products' front labels, including the "No Preservatives" representation, and state: "Welch's® Fruit Snacks are America's Favorite. With fruit as the first ingredient, 1.55 oz Welch's® pouches meet the USDA Smart Snack guidelines so **kids can enjoy them at school, at home or on the go.**" *See* ***Figure 13***.

//

//

30

*Figure 13.*



78.     Defendants' sustained efforts to market and advertise the products directly to children, parents, and schools underscores the need for judicial intervention: parents are unknowingly feeding to their children chemical preservatives they wish to avoid, which can have harmful health impacts. In all cases, Defendants are misleading consumers as to the ingredients they are ingesting.

      **E.**      **Defendants Knowingly Misled, and Continue to Mislead, Plaintiffs and Other Reasonable Consumers Who Relied, and Continue to Rely, on the Material and False "No Preservatives" Representation to Their Detriment**

79.     **Reputability.** Defendant Welch's is an iconic and trusted brand that has been in

business since 1869.[38] With such an established history, consumers reasonably expect all representations on the Products' labels to be truthful and reliable. Defendants use the good will associated with the Welch's® brand name to mislead consumers and gain a competitive advantage in the marketplace. In fact, Welch's is the only fruit snack in the market with citric acid that persists in making the "No Preservatives" claim, thereby increasing sales and profiting substantially from their fraudulent labeling.

80.     The Products are sold statewide at major retailers such as Kroger, Target, Walmart, and Walgreens. Consumers expect to receive truthfully labeled goods when shopping at such reputable stores. Defendants take advantage of this goodwill by intentionally leading consumers to believe the Products are preservative-free even though they contain two preservatives: citric acid and lactic acid.

81.     **Reasonable Consumer's Perception.**  Defendants' pervasive "No Preservatives" advertising campaign and brand strategy misleads reasonable consumers, including Plaintiffs and the Class, into believing that the Products do not contain preservatives, and that this false feature is a significant value-add over competitor fruit snacks.

82.     Reasonable consumers do not, and are not required to, view the back label and ingredient list of a product when purchasing everyday food and beverage items. The Products' advertising and front labeling indicate to consumers that the Products are preservative-free, because that is what they declare front-and-center: "No Preservatives." So reasonable consumers, including Plaintiffs and the Class, believing that Welch's is a reputable and trustworthy brand, relied on the "No Preservatives" representation on the front label and did not and do not view the Products' back label prior to purchasing the Product.

---

[38] *Our Story*, WELCH'S, https://www.welchs.com/our-story/ (accessed February 14, 2023).

83.     The average consumer lacks the specialized knowledge necessary to identify ingredients listed in the Products' ingredient lists as inconsistent with the "No Preservatives" representation on the front label. Thus, even if a consumer conducted a detailed review of the Products' back label and ingredient lists, which they are not required to do under the law, nothing would overcome the reasonable impression given by the "No Preservatives" representation on the front label — that the products do not contain any preservatives.

84.     By falsely and deceptively labeling the Products, Defendants capitalize on consumers' preference for foods that are preservative-free, and reasonable consumers, including Plaintiffs, perceived the Products as healthier than the available alternative fruit snacks, which do not claim to be preservative-free. This deceptive labeling scheme gives Defendants an unfair competitive advantage in the market and causes consumers to pay an unwarranted premium for the Products.

85.     **Falsity.** The "No Preservatives" representation is false and deceptive because the Products contain citric acid and lactic acid—two preservatives according to well-established food science and classified as such by the FDA. Citric acid and lactic acid are preservatives, and operate as such in the Products, regardless of Defendants' subjective purpose or intent for adding them to the Products.

86.     **Materiality and Reliance.** The "No Preservatives" misrepresentation is material to consumers because consumers prefer preservative-free foods, in part because of the health implications of preservatives, and otherwise because of the negative connotations associated with the consumption of preservatives generally. In all cases, consumer and marketing research is clear: consumers wish to avoid preservatives and thus they seek out, and are willing to pay more for, foods advertised as containing "No Preservatives," like the Products. Consequently,

33

Defendants have sold millions of the Products based on the false "No Preservatives" representation. Plaintiffs and the Class reasonably relied on Defendants' misrepresentations as to the preservative-content of the Products in deciding to purchase the Products and, as a result, have lost money and suffered injury in fact.

87.     **Defendants' Knowledge.** Welch's employs teams of food scientists, so Defendants knew, or should have known, that the "No Preservatives" representation was false, misleading, deceptive, and unlawful, at the time that Defendants manufactured, marketed, advertised, labeled, and sold the Products to Plaintiffs and the Class. Defendants' knowledge can also be inferred by the industry practice for fruit snacks, which is to <u>not</u> market them as containing "No Preservatives," due to ingredients like citric acid and lactic acid. Instead, Defendants intentionally and deliberately used the "No Preservatives" representation to induce Plaintiffs and the Class to buy the Products believing that the Products contain no preservatives.

> a.     **Knowledge of Reasonable Consumers' Perception.** Defendants knew or
> should have known that the Challenged Representation would lead
> reasonable consumers to believe that the Products are preservative-free —
> because that is how they labeled the Products, consistently and
> conspicuously: "No Preservatives."

> b.     **Knowledge of Materiality.** Defendants knew or should have known of
> the Challenged Representation's materiality to consumers. First,
> manufacturers and marketers, like Defendants, generally reserve the front
> display panel of labels or packaging on consumer products for the most
> important and persuasive information, which they believe will motivate
> consumers to buy the products. Defendants declare "No Preservatives" on

the front of the Product label, and its conspicuousness alone demonstrates Defendants' awareness of its importance to consumers and Defendants' understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representation. Second, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping consumers' expectations, because they believe those repeated messages will drive consumers to buy the product. Here, the constant, unwavering use of "No Preservatives" on countless Products, advertisements, and throughout Defendants' marketing campaign, evinces Defendants' awareness that the "No Preservatives" attribute is important to consumers.

    c.      **Defendants' Continued Deception, Despite Their Knowledge.**

Defendants had exclusive control over the Challenged Representation's inclusion on the Products' labels, packaging, and advertisements—i.e., Defendants could have stopped using the Challenged Representation to sell the Products. However, despite Defendants' knowledge of the Challenged Representation's falsity, and Defendants' knowledge that consumers reasonably rely on the representation in deciding to buy the Products, Defendants deliberately chose to market the Products with the Challenged Representation thereby misleading consumers into buying or overpaying for the Products. Thus, Defendants knew, or should have known, at all relevant times, that the Challenged Representation misleads reasonable consumers, such as Plaintiffs, into buying the Products to attain

the Products' attributes that Defendants falsely advertised and warranted.

88.   **Injury in Fact.** Plaintiffs and reasonable consumers would not have purchased the Products at all or would have paid less if they had known the truth — that the Products contain preservatives. Defendants' misleading and deceptive practices therefore proximately caused harm to Plaintiffs and the Class. Consumers, including Plaintiffs, purchased the Products to their detriment and did not receive the product they reasonably expected.

89.   **No Legitimate Business Reason.** There is no legitimate reason for the false and misleading labeling and advertising of the Products, other than to mislead consumers with regard to preservatives, which consumers wish to avoid ingesting. Through such false and misleading advertising, consumers purchase the Products incorrectly believing they are preservative-free, and the only such one in the fruit-snack market, thus providing Defendants with an unfair competitive advantage and financial windfall.

**F.   Defendants' False Advertising Unfairly Harms Competition**

90.   The demand for healthy, preservative-free food products is only increasing. As healthy snack-food options continue to increase in popularity, other companies will want to enter the market to meet growing consumer demand. Ultimately, this is good for consumers: it provides them with greater choice.

91.   As a result of Defendants' choice to dispense with accuracy in favor of deceit, they reap the benefits of marketing and selling a preservative-free snack, i.e., Defendants' Products are more attractive to consumers who will pay more for them, without any of the burden Defendants otherwise would incur if the Products were, in fact, produced without the use of preservatives. Defendants therefore have a built-in, unfair competitive advantage in the market over competitors seeking to bring a truly preservative free gelatin-based fruit snack product to

market. If Defendants' fraud is left unchecked, others companies may be dissuaded from entering the fruit snack market, given the overwhelming market share Defendants already hold as a result of their fraud.

92.     Further, existing competitors who produce gelatin-based fruit snacks are competing honestly in the marketplace and do not falsely claim that their products are preservative-free. For example, Mott's offers a fruit snack product, and its label complies with consumer protection laws: the product contains citric acid, and thus, the label does not falsely represent that the product contains "No Preservatives." *See* Mott's Fruit Snacks, *__Figure 14__*.

*__Figure 14.__*



**INGREDIENTS**
CORN SYRUP, SUGAR, MODIFIED CORN STARCH, PEAR JUICE CONCENTRATE, APPLE JUICE CONCENTRATE, STRAWBERRY PUREE, CARROT JUICE CONCENTRATE. CONTAINS 2% OR LESS OF: FRUIT PECTIN, CITRIC ACID, VITAMIN C (ASCORBIC ACID), DEXTROSE, SODIUM CITRATE, MALIC ACID, POTASSIUM CITRATE, SUNFLOWER OIL*, VEGETABLE AND FRUIT JUICE ADDED FOR COLOR, NATURAL FLAVOR, CARNAUBA WAX. *ADDS A TRIVIAL AMOUNT OF FAT
MOTT'S is a registered trademark of Mott's LLP, used by General Mills under license. ©2017 Mott's LLP.

93.     Annie's is yet another lawfully acting competitor disadvantaged by Welch's fraud. Annie's organic fruit snack product contains citric acid, and therefore Annie's does not label it as containing "No Preservatives." *See* Annie's Organic Bunny Fruit Snacks, *__Figure 15__*.

*Figure 15.*



**Ingredients**

Organic Tapioca Syrup, Organic Cane Sugar, Organic Tapioca Syrup Solids, Organic Pear Juice Concentrate, Water, Pectin, Citric Acid, Sodium Citrate, Ascorbic Acid (Vitamin C), Organic Color (Organic Black Carrot, Organic Black Currant Extracts), Organic Sunflower Oil, Natural Flavor, Organic Carnauba Wax.

94.     Because Defendants already hold a massive share of the fruit snack market in New York as a result of their fraud, the continued false and deceptive advertising of the Products serves as a major barrier to entry for other lawfully acting competitors attempting to break into the market with a truly preservative free fruit snack or otherwise.

95.     This stifling impact on competition harms consumers and law-abiding companies and threatens market growth. Ultimately it reduces consumer choice, making it more likely that consumers will be deceived into buying Defendants' Products, reasonably, but incorrectly, thinking that the Products contain "No Preservatives" as Defendants falsely represent. Less choice also means consumers pay higher prices at the cash register.

**G.     The Products are Substantially Similar**

96.     As described herein, Plaintiffs purchased the Welch's® Fruit Snacks Mixed Fruit

Product (the "**Purchased Products**"). The additional Products (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Products.

    a.    **Defendants.** All Products are owned, manufactured, sold, marketed, advertised, labeled, and packaged by Defendants.

    b.    **Brand.** All Products are sold under the same brand name: Welch's® Fruit Snacks.

    c.    **Purpose.** All Products are fruit snacks intended for human consumption.

    d.    **Ingredients.** All Products are made from largely the same ingredients or types of ingredients: various fruit purees (depending on the Product flavor), corn syrup, sugar, modified corn starch, citric acid, lactic acid, and gelatin, all of which are manufactured into the finished Products in the same or similar manner. Critically, all Products contain the preservatives citric and lactic acid rendering Defendants' "No Preservatives" representation false.

    e.    **Marketing Demographics.** All Products are marketed directly to consumers for personal consumption, including, to parents, families, and children in particular.

    f.    **Misrepresentation.** All Products contain the same misrepresentation ("No Preservatives") conspicuously and prominently placed on the front label and/or packaging.

    g.    **Packaging.** All Products are packaged similarly—snack-size pouches contained in outer cardboard boxes that all share in common the same marketing claims, including brand identity and product features.

h.   **Misleading Effect.**  The misleading effect of the Challenged

Representation on consumers is the same for all Products—consumers

overpay expecting a Product without preservatives, but instead receive

Products with citric acid and lactic acid, two preservatives. They are

denied the benefit of their bargain.

### NO ADEQUATE REMEDY AT LAW

97.   Plaintiffs and members of the Class are entitled to equitable relief, as no adequate

remedy at law exists.

a.   **Broader Limitations Period.** The statutes of limitations for the causes of

action pled herein vary. The limitations period for unjust enrichment

claims is six years, which is three years longer than the statutes of

limitations under GBL § 349 and GBL § 350. If Plaintiffs' claims for

equitable relief are not allowed to proceed, members of the Class who

purchased the Products more than three years before the filing of this

complaint may be barred from any form of financial recovery.

b.   **Broader Scope of Conduct.** The scope of actionable misconduct is

broader under unjust enrichment/restitution than the other causes of action

pled herein.

c.   **Injunctive Relief to Cease Misconduct and Dispel Misperception.**

Injunctive relief is appropriate on behalf of Plaintiffs and members of the

Class because Defendants continue to fraudulently misrepresent the

Products as containing "No Preservatives." Injunctive relief is necessary to

prevent Defendants from continuing to engage in the unfair, fraudulent,

and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendants' unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' Challenged Representation is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon is also not available through a legal remedy (such as monetary damages). In addition, Plaintiffs are currently unable to accurately quantify the damages caused by Defendants' future harm, because discovery and Plaintiffs' investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified the Class, the following remains unknown: the scope of the Class, the identities of its members, their respective purchasing practices, prices of past/future Products sales, and quantities of past/future Products sales.

d.     **Procedural Posture—Incomplete Discovery and Pre-Certification.**

Lastly, this is an initial pleading in this action and discovery has not yet

commenced and/or is at its initial stages. No class has been certified yet.
No expert discovery has commenced and/or completed. The completion of
fact/non-expert and expert discovery, as well as the certification of this
case as a class action, are necessary to finalize and determine the adequacy
and availability of all remedies, including legal and equitable, for
Plaintiffs' individual claims and any certified class. Plaintiffs therefore
reserve the right to amend this complaint and/or assert additional facts that
demonstrate this Court's jurisdiction to order equitable remedies where no
adequate legal remedies are available for either Plaintiffs and/or any
certified class. Such proof, to the extent necessary, will be presented prior
to the trial of any equitable claims for relief and/or the entry of an order
granting equitable relief.

## CLASS ACTION ALLEGATIONS

98.     **Class Definition.** Plaintiffs bring this action as a class action pursuant to Federal
Rules of Civil Procedure 23(b)(2) and 23(b)(3) individually and on behalf of all others similarly
situated, and as members of the Class defined as follows:

> All persons who purchased the Products in the State of New York, for
> personal use and not for resale, during the time period of six years prior to the
> filing of the Complaint through the present. ("**Class**")

99.     **Class Definition Exclusions.** Excluded from the Class are: (i) Defendants, their
assigns, successors, and legal representatives; (ii) any entities in which Defendants have
controlling interests; (iii) federal, state, and/or local governments, including, but not limited to,
their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or
subdivisions; and (iv) any judicial officer presiding over this matter and person within the third

degree of consanguinity to such judicial officer.

100.    **Reservation of Rights to Amend the Class Definition.** Plaintiffs reserve the right to amend or otherwise alter the Class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

101.    **Numerosity.** Upon information and belief, the Class consists of hundreds of thousands of purchasers (if not more) dispersed throughout the State of New York. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

102.    **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Common questions of law and fact include, but are not limited to, the following:

a.    Whether Defendants engaged in deceptive acts or practices in violation of N.Y. GBL § 349 by advertising and selling the Products as alleged herein;

b.    Whether Defendants act of selling the Products as alleged herein is false advertising in violation of N.Y. GBL § 350;

c.    Whether Defendants knew, or by the exercise of reasonable care should have known, their labeling and advertising was and is untrue or misleading;

d.    Whether Plaintiffs and the Class paid more money for the Products than the value they actually received;

e.    How much more money Plaintiffs and the Class paid for the Products than the value they actually received;

f.      Whether Defendants' conduct constitutes breach of warranty;

g.      Whether Plaintiffs and the Class are entitled to injunctive relief; and

h.      Whether Defendants were unjustly enriched by their unlawful conduct at the expense of Plaintiffs and the Class.

103.    **Typicality.**  Plaintiffs' claims are typical of the claims of the Class Members they seek to represent because Plaintiffs, like the Class Members, purchased Defendants' misleading and deceptive Products. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendants' conduct. Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

104.    **Adequacy.** Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the Class Members Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

105.    **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.      The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.      Absent a class action, the members of the Class will continue to suffer

damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

c.      Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.      When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.      This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendants.

106.   **Inconsistent Rulings.** Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

107.   **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

108.   **Manageability.** Plaintiffs and Plaintiffs' counsel are unaware of any difficulties

that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT ONE

**Violation of New York General Business Law,**

**New York General Business Law § 349, et seq.**

**(*On Behalf of Plaintiffs and the Class*)**

109.    **Incorporation by Reference.** Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

110.    **Class.** Plaintiffs brings this cause of action pursuant to Section 349, *et seq*., New York General Business Law ("GBL"), on their own behalf and on behalf of the Class.

111.    **GBL § 349.** New York General Business Law Section 349, *et seq*., declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

112.    **False Advertising Claims.** Defendants, in their advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the "No Preservatives" Representation—despite the fact the Products are made with citric acid and lactic acid, two well-established preservatives. Such claims and omissions appear on the label and packaging of the Products, which are sold at retail stores throughout New York, and over the internet.

113.    **Materially Misleading.** Defendants used the "No Preservatives" representation with the intent to sell the Products to consumers, including Plaintiffs and the Class. Defendants knew or should have known of its falsity. The "No Preservatives" representation is likely to deceive consumers into purchasing the Products because it is material to the average, ordinary,

and reasonable consumer. Defendants knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the Products do not contain any preservatives, when they actually do. By advertising that the Products contain "No Preservatives" on the front label and throughout its deceptive marketing campaign, Defendants prove that a "No Preservatives" representation is material to consumers. As a result of its deceptive acts and practices, Defendants have sold millions of Products to unsuspecting consumers across New York. If Defendants had advertised their Products truthfully and in a non-misleading fashion, Plaintiffs and other members of the Class would not have purchased the Products or would have paid less for them.

114.   Defendants' false and deceptive labeling and advertising of the Products constitute a deceptive act and practice in the conduct of business in violation of N.Y. GBL § 349(a) and Plaintiffs and the Class have been damaged thereby.

115.   **Deliberately False and Misleading.** Defendants do not have any reasonable basis for the claims about the Products made in Defendants' advertising and on Defendants' packaging or labeling because the Products are made with the preservatives citric acid and lactic acid. Defendants know and knew that the Products are not truly preservative-free, yet Defendants intentionally advertise and market the Products to deceive reasonable consumers into believing that the Products contain no preservatives.

116.   **False Advertising Claims Cause Purchase of Products.** Defendants' improper consumer-oriented conduct—including labeling and advertising the Products as containing "No Preservatives," when in fact they contain the well-documented preservatives, citric acid and lactic acid, is misleading in a material way in that it, *inter alia*, induced Plaintiffs and the Class to purchase and pay a premium for Defendants' Products and to use the Products when they

otherwise would not have. Defendants made these untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

117. **Reasonable Reliance.** Plaintiffs and the Class reasonably relied on the material and false "No Preservatives" representation to their detriment in that they purchased the Products.

118. **Injury in Fact.** Plaintiffs and the Class paid a premium for Products that— contrary to Defendants' representations—were not preservative-free. Accordingly, Plaintiffs and the Class received less than what they bargained and/or paid for.

119. Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct—namely Plaintiffs and members of the Class lost the premium they paid for Products that are preservative-free.

120. **Conduct Violates GBL § 349.** Defendants' conduct as alleged herein constitutes recurring, unlawful deceptive acts and practices in violation of N.Y. GBL § 349, and as such, Plaintiffs and the Class seek monetary damages and the entry of preliminary and permanent injunctive relief, including without limitation, public injunctive relief, against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

121. **Business Practice.** All of the consumer-oriented conduct alleged herein occurred and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendants voluntarily alter their conduct or Defendants are otherwise ordered to do so.

122. **Injunction.** Plaintiffs and the members of the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of labeling and advertising the sale and use of the Products as alleged herein. Likewise, Plaintiffs and the members of the Class seek an order requiring Defendants to disclose such misrepresentations,

and to preclude Defendants' failure to disclose the existence and significance of said misrepresentations.

123.   **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of GBL § 349, Plaintiffs and members of the Class were harmed when they paid a premium for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the premium paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for Defendants' violation of GBL § 349 in the form of damages to compensate Plaintiffs and the Class for said monies. Plaintiffs seek to recover their actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and attorneys' fees, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

124.   **Injunction.** Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Absent an order enjoining Defendants' unlawful conduct as described herein, Plaintiffs and members of the Class will be unable to rely on the representations on the Products' labels, and the general public will be subjected to a persistent threat of future harm.

//

//

//

<u>**COUNT TWO**</u>

**Violation of New York General Business Law**

**New York General Business Law § 350, *et seq*.**

(***On Behalf of Plaintiffs and the Class***)

125.     **Incorporation by reference.** Plaintiffs repeat and realleges the allegations set

forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

126.     **Class.** Plaintiffs bring this cause of action pursuant to Section 350, *et seq*., New

York General Business Law, on their own behalf and on behalf of the Class.

127.     **GBL § 350.** New York General Business Law Section 350 declares unlawful

"[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any

service in this state."

128.     GBL § 350a(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a
> commodity, or of the kind, character, terms or conditions of any
> employment opportunity if such advertising is misleading in a material
> respect. In determining whether any advertising is misleading, there shall
> be taken into account (among other things) not only representations made
> by statement, word, design, device, sound or any combination thereof, but
> also the extent to which the advertising fails to reveal facts material in the
> light of such representations with respect to the commodity or
> employment to which the advertising relates under the conditions
> prescribed in said advertisement, or under such conditions as are
> customary or usual. . .

129.     **False & Material Representations.** Defendants' labeling, packaging, and

advertising contain untrue and materially misleading statements concerning the Products

inasmuch as they misrepresent that the Products contain "No Preservatives," when they actually

contain the preservatives citric acid and lactic acid.

130.     The "No Preservatives" misrepresentation is material because consumers prefer

preservative-free foods, and the misrepresentation is likely to mislead reasonable consumers into purchasing the Products.

131.   **Injury in Fact.** Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct when they paid a premium for Products that are preservative-free and received Products that contained the preservatives citric acid and lactic acid.

132.   Plaintiffs and members of the Class relied upon the labeling, packaging, and advertising and paid a premium for the Products which—contrary to Defendants' representations—were not preservative-free. Accordingly, Plaintiffs and the Class members received less than what they bargained and/or paid for

133.   **Intent to Sell.** Defendants' labeling and advertising as alleged herein was specifically designed to induce—and did, indeed, induce—reasonable consumers, like Plaintiffs and members of the Class, to purchase the Products.

134.   **Reasonable Reliance.** Plaintiffs and the Class reasonably relied on the material and false "No Preservatives" representation to their detriment in that they purchased the Products.

135.   **Conduct Violates GBL § 350.** Defendants violated GBL § 350 when they labeled and advertised the Products in an unfair, deceptive, untrue, and materially misleading way and disseminated these misrepresentations to the public through the Products' labeling, packaging, and advertising.

136.   Defendants' consumer-oriented conduct as alleged herein constitutes recurring, unlawful false advertising in violation of N.Y. GBL § 350.

137.   **Causation/Damages.** As a direct and proximate result of Defendants' misconduct

in violation of GBL § 350, Plaintiffs and members of the Class were harmed when they paid a premium for the Products based on Defendants' misrepresentations. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of violation of GBL § 350 in damages to compensate Plaintiffs and the Class for said monies, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct to prevent ongoing and future harm that will result. Accordingly, Plaintiffs seek a monetary award for Defendants' violation of GBL § 350 in the form of damages to compensate Plaintiffs and the Class for said monies. Plaintiffs seek to recover their actual damages or five hundred (500) dollars, whichever is greater, three times actual damages, and attorneys' fees, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

138.    **Injunction.** Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Absent an order enjoining Defendants' unlawful conduct as described herein, Plaintiffs and members of the Class will be unable to rely on the representations on the Products' labels, and the general public will be subjected to a persistent threat of future harm.

//

//

52

## COUNT THREE

**Fraudulent Inducement – Intentional Misrepresentation Under New York Law**

(*On Behalf of Plaintiffs and the Class*)

139.    **Incorporation By Reference.** Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

140.    **Class.** Plaintiffs bring this claim individually and on behalf of the Class.

141.    **Defendants' Misrepresentation.** Defendants label and advertise the Products as containing "No Preservatives," when the Products actually contain the preservatives citric acid and lactic acid. Thus, the "No Preservatives" representation constitutes a false statement and Defendants have made misrepresentations as to the Products.

142.    **Duty.** Defendants had a pre-contractual duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the development, testing, manufacture, marketing, advertising, distribution, and sale of the Products, as well as to impart truthful and accurate information to Plaintiffs and the Class.

143.    **Breach.** Defendants breached their pre-contractual duty to exercise reasonable care and to impart truthful and accurate information to Plaintiffs and the Class by marketing and selling the Products using the false and deceptive "No Preservatives" representation when the Products actually contain at least two preservatives, citric acid and lactic acid.

144.    **Materiality.** Defendants' misrepresentations regarding the Products are material because they relate to the type and quality of ingredients used in the Products, and a reasonable consumer would attach importance to such representations and would be induced to act thereon in making his or her purchase decision. Defendants also knew that their misrepresentations regarding the Products were material to consumers, and that a reasonable consumer would rely

53

on Defendants' representations in making purchasing decisions.

145.   **Defendants' Knowledge.** Defendants knew that the Products were falsely labeled and advertised, and that knowledge of the fact that the products contain preservatives was withheld from consumers.

146.   **Plaintiffs' Knowledge.** Plaintiffs and Class members did not know, nor could they have known through reasonable diligence, that the Products contain preservatives.

147.   **Intent to Defraud.** Defendants intended to induce—and did, indeed, induce—Plaintiffs and the Class to purchase the Products by affirmatively misrepresenting that the Products are preservative free, despite the fact that the Products contain two preservatives. Defendants' intent is evidenced by Defendants' consistent use and prominent placement of the "No Preservatives" representation on labeling and packaging across all variations of the Products.

148.   **Reasonable Reliance.** Plaintiffs and the Class reasonably and justifiably relied on Defendants' intentional misrepresentations when purchasing the products, and had they known the truth, they would not have purchased the products or would have paid less for them. plaintiffs and Class Members reliance on defendants' misrepresentation was reasonable, i.e., consumers understood "no preservatives" to mean "no preservatives" especially given the prominent location of that false declaration on the front label, by an iconic brand they trusted.

149.   **Causation/Damages.** As a direct and proximate result of Defendants' intentional misrepresentation, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in

an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for fraudulent inducement by intentional misrepresentation in the form of damages to compensate Plaintiffs and the Class for said monies, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

150.    **Injunction.** Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Absent an order enjoining Defendants' unlawful conduct as described herein, Plaintiffs and members of the Class will be unable to rely on the representations on the Products' labels, and the general public will be subjected to a persistent threat of future harm.

<u>**COUNT FOUR**</u>

**Breach of Express Warranty Under New York Law**

(*On Behalf of Plaintiffs and the Class*)

151.    **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

152.    **Class.** Plaintiffs bring this claim individually and on behalf of the Class.

153.    **Express Warranty.** By warranting the Products as containing "No Preservatives," Defendants made material promises and affirmations of fact on the Products' packaging and labeling, and through their marketing and advertising. This "No Preservatives" labeling and advertising constitutes an express warranty and became part of the basis of the bargain between Plaintiffs and members of the Class and Defendants. Defendants purport,

through the Products' labeling and advertising, to create express warranties that the Products, among other things, do not contain preservatives.

154.    **Material Statement.** Defendants statement that the Products contain "No Preservatives" is material because the statement relates to the type and quality of ingredients used in the Products, and a reasonable consumer would attach importance to such representations and would be induced to act thereon in making his or her purchase decision.

155.    **Reliance.** Plaintiffs and members of the Class reasonably relied on Defendants' express warranty that the Products contain "No Preservatives" in making their purchase decisions, and this warranty formed part of the basis of the contract between Plaintiffs and members of the Class and Defendants.

156.    **Breach of Warranty.** Contrary to Defendants' express warranty, the Products do not conform to the labeling and advertising because they contain preservatives and, therefore, Defendants breached their warranties about the Products and their qualities.

157.    **Notice of Breach.** Plaintiffs took reasonable steps to notify Defendants of their breach within a reasonable time. Specifically, Defendants were provided with notice of their breach via certified mail on April 14, 2022. Defendants failed to take corrective action to bring the Products in compliance with the "No Preservatives" warranty.

158.    **Causation/Remedies.** As a direct and proximate result of Defendants' breach of warranty, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for breach of warranty in the

form of damages to compensate Plaintiffs and the Class for said monies, as well as injunctive

relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct to

prevent ongoing and future harm that will result.

159.    **Injunction.** Injunctive relief is necessary to prevent Defendants from continuing

to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent

future harm—none of which can be achieved through available legal remedies (such as monetary

damages to compensate past harm). Absent an order enjoining Defendants' unlawful conduct as

described herein, Plaintiffs and members of the Class will be unable to rely on the

representations on the Products' labels, and the general public will be subjected to a persistent

threat of future harm.

<u>**COUNT FIVE**</u>

**Unjust Enrichment/Restitution Under New York Law**

(***On Behalf of Plaintiffs and the Class***)

160.    **Class.**  If there are no enforceable contractual obligations between the Parties,

Plaintiffs bring this claim for unjust enrichment individually and on behalf of the Class in the

alternative.

161.    **Plaintiffs/Class Conferred a Benefit.** As a result of Defendants unlawful and

deceptive conduct as described in this Complaint, Plaintiffs and members of the Class conferred

a benefit on Defendants in the form of the purchase price of the Products. Defendants have been

unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

162.    Defendants accepted and retained the benefit derived from sales of the Products to

Plaintiffs and the Class Members.

163.    **Defendants' Knowledge of Conferred Benefit.** As described in this Complaint,

Defendants had knowledge of such benefit and Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would not generate revenue from the sales of the Products.

164.   **Defendants' Unjust Receipt Through Deception.** Defendants' knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent, misleading, and deceptive representations and omissions, as described in this Complaint. Equity and good conscious militate against permitting Defendants to retain the benefit conferred by Plaintiffs and members of the Class.

165.   Plaintiffs and the Class members are, therefore, entitled to restitution in the form of the revenues derived from Defendants' sale of the Products.

166.   **Causation/Damages.** As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

167.   **Injunction.** Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Absent an order enjoining Defendants' unlawful conduct as

described herein, Plaintiffs and members of the Class will be unable to rely on the representations on the Products' labels, and the general public will be subjected to a persistent threat of future harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendants as follows:

A.   **Certification:** For an order certifying this action as a class action, appointing Plaintiffs as the Class Representatives, and appointing Plaintiffs' Counsel as Class Counsel;

B.   **Declaratory Relief:** For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

C.   **Injunction:** For an order requiring Defendants to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendants to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendants' unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

D.   **Public Injunctive Relief:** For an order enjoining the use of deceptive "No Preservatives" representations in connection with the advertising and sale of the Products;

E.   **Damages/Restitution/Disgorgement:** For an order awarding monetary

compensation in the form of damages, restitution, and/or disgorgement to
Plaintiffs and the Class, consistent with permissible law and pursuant to only
those causes of action so permitted;

F.      **Attorneys' Fees and Costs:** For an order awarding attorneys' fees and costs,
consistent with permissible law and pursuant to only those causes of action so
permitted;

G.      **Pre-/Post-Judgment Interest:** For an order awarding pre-judgment and post-
judgment interest, consistent with permissible law and pursuant to only those
causes of action so permitted; and

H.      **All Just and Proper Relief:** For such other and further relief as the Court deems
just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues and causes of action so triable.

Dated: February 15, 2023                          **CLARKSON LAW FIRM, P.C.**

                                                  */s/  Timothy K. Giordano*
                                                  Ryan J. Clarkson, Esq.
                                                  Timothy K. Giordano, Esq.
                                                  Zachary T. Chrzan, Esq.
                                                  (to be admitted *pro hac vice*)
                                                  Chaz Glick, Esq.
                                                  (to be admitted *pro hac vice*)

                                                  *Attorneys for Plaintiffs*